MARK NOVAK
DOUGLAS A. COLBY
JOHN M. POPELKA
STEVEN A. BERMAN
JEFFREY M. ALTER
BRIAN D. TEVEN
JENNIFER J.C. KELLY
SCOTT C. SANDS
DAVID FIGLIOLI

―――――

STEVEN A. WADE
PATRICK J. BLUM
HAYLEY K. GRAHAM
LISA M. CIHARAN
CHARLIE A. TERRY

**LAW OFFICES**
**ANESI OZMON**
RODIN NOVAK & KOHEN LTD.
21ST FLOOR
161 NORTH CLARK STREET
CHICAGO, ILLINOIS 60601

―――――

T: (312) 372-3822
F: (312) 372-3833

―――――

WWW.ANESILAW.COM

FORMERLY
HORWITZ & ANESI
(1955-1965)
J.W. HORWITZ (DEC'D 1963)
CHARLES E. ANESI (DEC'D 1995)
RICHARD A. LEWIN (DEC'D 1985)
NAT P. OZMON (DEC'D 2011)

―――――

ADMINISTRATION
PAOLA A. VILLARREAL

―――――

OF COUNSEL
DAVID E. RAPOPORT

April 23, 2021

Brian D. Hahn
Hickey Smith, LLP
2863 West 95th St., Suite 256
Naperville, IL 60564
bhahn@hickeysmith.com

Re: NICK GEORGEFF v. DON BORNEKE CONSTRUCTION, INC.
Our File No. 16546/SAB/CAT
Date of Incident: November 15, 2018

Counsel:

On December 18, 2020, Plaintiff propounded its Interrogatories and Requests for Production of Documents on the Defendant Don Borneke Construction, Inc. On April 1, 2020, your office provided written Answers and Responses, as well as document production in response to Plaintiff's discovery. We believe the Answers to Interrogatories, Responses to Requests for Production, and document production provided by your office, all to be deficient. Please see below for specific deficiencies and Plaintiff's demand for supplemented Answers, Responses, and document production.

**Interrogatories**

Plaintiff's Interrogatory No. 2 propounded on Don Borneke, states

State the names, addresses and telephone numbers, of all persons who witnessed or claim to have witnessed the occurrence described in the Complaint. If employees of your company, state:

**Exhibit A**

      (a) Their present employment position with your company;

      (b) Their employment position with your company at the time of the occurrence.

Don Borneke's answer to this Interrogatory was as follows:

"Defendant objects to Interrogatory No. 2 to the extent it calls for speculation, is premature since discovery is ongoing and not complete, and seeks disclosure of information that is known or equally accessible to Plaintiff. Subject to and without waiving its objections, Defendant refers Plaintiff to the individuals listed or otherwise disclosed in his answers to interrogatories and Fed. R. Civ. P. 26(a) initial disclosures indicated in the records produced or obtained via subpoena with notice given to all parties.

**This answer is improper and lacking in specificity. As such, Plaintiff requests Defendant provided an updated answer to Interrogatory No. 2 identifying any and all witnesses to the subject incident within the knowledge of Defendant**.

Plaintiff's Interrogatory No. 3 propounded on Don Borneke, states:

State the names, addresses and telephone numbers, of all persons whom you believe to have been at the scene of the occurrence either immediately before, at the time of, or immediately subsequent to the occurrence referred to in the Complaint. If employees of your company, state:

      (a) Their present employment position with your company;

      (b) Their employment position with your company at the time of the occurrence.

Don Borneke's answer to this Interrogatory was as follows:

Defendant objects to Interrogatory No. 3 because it is vague, ambiguous, overbroad, and calls for speculation. Subject to and without waiving its objections, Defendant refers Plaintiff to the individuals listed or otherwise disclosed in his answers to interrogatories and Fed. R. Civ. P. 26(1) initial disclosures, the records produced to date by the parties, any medical records obtained via subpoena, and those disclosed in any current or future deposition transcript. Answering further, Defendant refers Plaintiff to those entities listed in the document entitled Mendota Hills Repowering Plan of the Day dated Thursday, November 15, 2018 enclosed in its responses to plaintiff's request for Production.

**This answer is improper and lacking in specificity. As such, Plaintiff requests Defendant provided an updated answer to Interrogatory No. 3 and provide the requested information for any and all individuals within the knowledge of this Defendant who were**

**present at the scene immediately before, at the time of, or subsequent to the subject occurrence. Referring Plaintiff to documents is an improper answer, and Plaintiff requests the specific individuals be identified in Defendant's supplemental Answer.**

Plaintiff's Interrogatory No. 4 propounded on Don Borneke, states:

State the names, addresses and telephone numbers, of all supervisory personnel whom you employed at the time and place of the occurrence and for thirty (30) days prior and subsequent thereto as described in the Complaint.

Don Borneke's answer to this Interrogatory was as follows:

Defendant objects to Interrogatory No. 4 because it is overbroad, vague, ambiguous, assumes facts without evidentiary support, and calls for speculation. Subject to and without waiving its objections, Defendant states not applicable.

**This answer and objections are improper. This interrogatory is clear, properly limited, does not assume any facts, and does not call for speculation, as this Defendant would be in the best position to know each and every employee it employed on the subject jobsite. As such, Plaintiff requests Defendant provided an updated answer to Interrogatory No. 4 properly listing and identifying each and every supervisory personnel employed by Defendant on this subject jobsite for the 30 days prior and subsequent to this occurrence.**

Plaintiff's Interrogatory No. 8 propounded on Don Borneke, states:

State whether any inspection was made of the area surrounding the place where the Plaintiff(s) was injured on the date of the occurrence or within a thirty (30) day period of time prior or subsequent thereto. If your answer is in the affirmative, state the name and address of the person(s) making such inspection; whether a written or oral report was made and to whom a report was made.

Don Borneke's answer to this Interrogatory was as follows:

Defendant objects to Interrogatory No. 8 because it is overbroad, vague, lacks proper foundation, assumes facts without evidentiary support, and calls for speculation regarding the term "inspection" and the phrase "area where this incident occurred." Subject to and without waiving its objections, Defendant states it has no information responsive to this Interrogatory and refers Plaintiff to his employer for any potential information sought in this interrogatory.

**This answer and objections are improper. The answer refers Plaintiff to his employer, but the interrogatory specifically asked for this Defendant, Don Borneke to answer this Interrogatory. As such, Plaintiff requests the answer to this Interrogatory be properly supplemented and for the Defendant to identify any and all inspections made by this Defendant, or known to this Defendant, of the area where the subject incident occurred for a period of 30 days prior and subsequent to the occurrence.**

Plaintiff's Interrogatory No. 9 propounded on Don Borneke, states:

> Were any photographs taken of the Plaintiff, the scene of the occurrence (including any progress photos), and/or the appurtenances described in the Complaint? If the answer is in the affirmative, state:
>
> (a) The name and address of the person taking said photographs;
> (b) The date on which said photographs were taken;
> (c) The name and address of all persons who presently have copies of said photographs.

Don Borneke's answer to this Interrogatory was as follows:

> Defendant objects to Interrogatory No. 9 to the extend it calls for speculation. Subject to and without waiving its objection, Defendant states it currently possesses copies of photographs provided by Plaintiff's counsel and refers Plaintiff to any future photographs introduced or otherwise disclosed by the parties or obtained via subpoena with due notice given to all parties.

**This answer and objections are improper and deficient. Specifically, Defendant refers Plaintiff to photographs which may be introduced or disclosed by parties in the future but does not identify any photographs other than those identified by the Plaintiff. As such, Plaintiff requests Defendant properly supplement this answer to identify any and all photographs (of any kind including jobsite progress photographs), and further requests this Defendant to provide copies of same pursuant to its duty under the Federal Rules of Civil Procedure.**

Plaintiff's Interrogatory No. 13 propounded on Don Borneke, states:

> At the time of the occurrence, did the Defendant have liability insurance? If so, please state the name of the company, the name of the insured, the policy number and the policy limits.

Don Borneke's answer to this Interrogatory was as follows:

> Defendant objects to Interrogatory No. 13 because it seeks a legal conclusion and disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Defendant states" General Casualty Company of Wisconsin issued comprehensive insurance policy number CCI0169885 to Borneke Construction Inc., effective October 14, 2018 through October 14, 2019 with liability limits of $1 million.

**This answer and objections are improper and deficient. The answer does not list any and all applicable excess policies and their respective limits. As such, Plaintiff requests Defendant properly identify any and all insurance policies, including excess policies, and their respective limits.**

Plaintiff's Interrogatory No. 15 propounded on Don Borneke, states:

> Identify the names and addresses of every individual who you anticipate will testify at trial, identifying the subjects on which the witness will testify and any opinions expected to be elicited from the witness.

Don Borneke improperly lists another interrogatory in place of Plaintiff's actual interrogatory 15, and answers as to photographs of the subject jobsite.

**As such, this answer is clearly non-responsive and deficient. Plaintiff request that Defendant answer the actual Interrogatory No. 15 with specificity as to the witnesses Defendant expects to testify at trial, and the expected topics on which they will testify.**

**Requests for Production and Document Production**

Plaintiff's Request for Production No. 3 propounded on Don Borneke requests:

> All photographs, slides or motion pictures taken of the Plaintiff(s), any item involved or the scene of the alleged occurrence, and any jobsite progress photos (for 60 days prior and 35 days subsequent to the date of the alleged occurrence).

Don Borneke's Response to this Request was as follows:

> Defendant only possesses copies of the photographs previously produced by the Plaintiff.

**This response and document production is improper and deficient. Plaintiff requests the Defendant properly supplement this response and document production to include any and all progress photographs, aerial photographs, jobsite photographs, and any other photographs of the jobsite as a whole within the possession of this defendant and for the timeframe requested.**

Plaintiff's Request for Production No. 7 propounded on Don Borneke requests:

> Any and all accident reports, investigative reports, and inspection reports pertaining to the incident/injuries sustained by any party to this lawsuit.

Don Borneke's Response to this Request was as follows:

> Defendants object to Request No. 7 to the extent it seeks attorney-client communications, attorney work product, or other documentation prepared in anticipation of litigation. Subject to and without waiving its objections, Defendant refers Plaintiff to those medical records produced or disclosed by Plaintiff or obtained via subpoena with due notice given to all parties to the extent these

>documents constitute "accident report, investigative reports, and inspection reports" to the extent it understands theses terms to mean.

**This response and accompanying objections are improper and deficient. Referring Plaintiff to his own medical records when Plaintiff is asking for reports pertaining to the injuries that are the subject of this lawsuit is completely improper and nonresponsive. As such, Plaintiff requests the Defendant properly supplement this response and accompanying document production and provide any and all reports pertaining to injuries on this jobsite within its possession.**

Plaintiff's Request for Production No. 10 propounded on Don Borneke requests:

>Any and all contract documents between the parties to this lawsuit, and each of them, and/or with any other entity, and/or with the any Plaintiff's employer, including but not limited to: (a) notices to bidders; (b) special instructions to bidders; (c) general instructions to bidders; (d) proposals; (e) special conditions of contract; (f) general conditions of contract; (g) contract specifications including project and general specifications; (h) contract drawings including all drawings listed or described in the special conditions of the contract; (i) field drawings; (j) all bonds; (k) insurance certificates and policies referred to in the foregoing documents; (l) any and all other documents included or referred to in the foregoing documents and (m) any and all addenda to the foregoing documents in effect at the time relating to the occurrence, and prior to the erection, construction, repairs, maintenance, remodeling and/or alteration, which is the subject matter of this lawsuit.

Don Borneke's Response to this Request was as follows:

>Defendant objections to Request No 10 because it is overbroad, not limited to the timeframe surrounding the incident alleged in the complaint, lacks proper foundation, and to the extent it calls for speculation about what is in the possession other parties. Subject to and without waiving its objections, Defendant refers Plaintiff to the records produced to date by the parties via discovery, obtained from third parties via subpoena. Answering further, Defendant refers Plaintiff to the enclosed M.A. Mortenson Company Subcontract Agreement (Subcontract number: 18141002) effective December 29, 2018 between M.A. Mortenson Company and Don Borneke Construction Inc. and Change Order No. 002 dated March 4, 2019.

**This response and accompanying objections are improper and deficient. Plaintiff is requesting this defendant provide any and all bids, proposals, drawings, change orders, and documents referenced and required by the subject contract – and requested in Request No. 10. This includes but is not limited to:**

- **All change orders for work on this subject project;**
- **Site Specific Safety programs (referenced on page 2 of the contract);**

- **Any and all submittals and or bids for the subject project;**
- **Any and all drawings, diagrams, design plans, or other similar documentation for the subject project and contract;**
- **Quality Management Program (referenced on page 17 of the contract);**
- **Any and all documents, drawings, plans, or other similar types of materials pertaining to grading, paving, and maintenance of the roadways and laydown areas on this subject project;**
- **Any and all documents, photographs, or other materials pertaining to "spot repairs" (referenced on page 23 of the contract)**
- **All documents referenced on page 34 of the contract, including:**
    - Exhibit C-1 – Schedule Mendota Hills Re Power Schedule;
    - Mortenson Zero Injury Safety Program;
    - Mortenson Wind Turbine Agreement
    - Mortenson Wind Turbine Agreement – Illinois Addendum
    - Attachment 2 – new Project AIMA 90816 Final
    - Attachment 3 – Road Agreement_County Final_Redacted
    - Exhibit E-2 Meteorological Tower Specifications
    - Scope of Work – BOP Agreement
    - Exhibit D Attachment 1 Civil Specification;
    - Exhibit F – Applicable Standards
    - Exhibit FF – Owner Furnished Equipment
    - Exhibit G – Project site Description
    - Exhibit K – Contractor Provided Training
    - Exhibit L – Attachment 4 and 5
    - Exhibit NN Geotechnical Studies Report
    - 2018-05-25 Mendota Hills 90% Civil Plans
    - Exhibit E-2 Attachment 6 met tower specifications
    - Mendota Hills Preliminary Foundation Design
- **Mortenson Zero Injury Training Program Manual (referenced on page 36 of the contract)**
- **Mortenson Mobile Crane Training Manual (referenced on page 36 of the contract)**
- **Subcontractor's site-specific safety plan (referenced on page 36 of the contract)**
- **Subcontractor's job hazard analysis (referenced on page 36 of the contract);**
- **Hazard Communication as set forth in the Zero Injury Manual (referenced on page 36 of the contract);**
- **Daily written pre-task plans for each item of work (referenced on page 36 of the contract)**
- **Documentation pertaining to the required on site safety professionals (referenced on page 37 of the contract)**
- **Site specific return to work/injury case management plan (referenced on page 37 of the contract)**
- **Weekly report of hazard recognitions (referenced on page 41 of the contract)**

- **Organizational chart of subcontractor personnel assigned to the project (referenced on page 43 of the contract)**
- **Checklists for all inspections required by the quality management plan (referenced on page 42 of the contract)**
- **Documents pertaining to the preparatory meeting (referenced on page 45 of the contract)**

Plaintiff's Request for Production No. 11 propounded on Don Borneke requests:

> Any and all time sheets, payroll records, and other records showing names and addresses of all employees working for any party to this lawsuit on the date of the occurrence and for a thirty (30) day period of time prior and subsequent thereto.

Don Borneke's Response to this Request was as follows:

> Defendant objects to Request No. 11 because it is overbroad, not limited to the timeframe surrounding the incident alleged in the complaint, lacks proper foundation, and to the extent it calls for speculation about what is in the possession of other parties. Subject to and without waiving its objections, Defendant refers Plaintiff to the individuals listed or otherwise disclosed in its answers to interrogatories and Fed. R. Civ. P. 26(a) initial disclosures, the records produced to date by the parties, and those disclosed in any current or future deposition transcript. Answering further, Defendant refers Plaintiff to those entities listed in the enclosed document entitled Mendota Hills Repowering Plan of the Day (POD) dated Thursday, November 15, 2018.

**This response and accompanying objections are improper and deficient. Plaintiff is requesting this defendant provide any and all responsive documents, including but not limited to: PODs; time sheets; payroll records; or other records documenting the personnel of this Defendant on the subject jobsite for the thirty days prior and subsequent to the subject occurrence.**

Plaintiff's Request for Production No. 12 propounded on Don Borneke requests:

> Any and all work progress reports, job logs, sign off sheets or daily work permits, and any minutes of safety meetings along with all attachments, sign in sheets and handouts, pictures or videos or other documents related to such meeting, for a ninety (90) day period of time prior to the date of the occurrence which is the subject matter of this lawsuit, and for a thirty (30) day period of time subsequent thereto.

Don Borneke's Response to this Request was as follows:

> Defendant objects to Request No. 12 because it is overbroad, not limited to the timeframe surrounding the incident alleged in the complaint, lacks proper foundation, and to the extent it calls for speculation about what is in the

possession of other parties. Subject to and without waiving its objections, Defendant refers Plaintiff to those entities listed in the document entitled Mendota Hills Repowering Plan of the Day (POD) dated Thursday, November 15, 2018.

**This response and accompanying objections are improper and deficient. Plaintiff is requesting this defendant provide any and all responsive documents, including but not limited to: progress reports, job logs, sign off sheets, daily work permits, minutes of safety meetings along with attachments, sign in sheets, handouts, pictures or videos related to such a meeting, and any other responsive documents for the period of 90 days prior to and 30 days subsequent to the subject occurrence. As such, Plaintiff requests defendant properly respond to this Request and provide the requested documentation.**

Plaintiff's Request for Production No. 13 propounded on Don Borneke requests:

Any and all daily reports by any party to this lawsuit for a ninety (90) day period of time prior to the date of the occurrence which is the subject matter of this lawsuit, and for a thirty (30) day period of time subsequent thereto.

Don Borneke's Response to this Request was as follows:

See Defendant's answer to Interrogatory No. 14.

**This response is improper. As such, Plaintiff requests Defendant provide the requested documentation for the timeframe requested.**

Plaintiff's Request for Production No. 14 propounded on Don Borneke requests:

Any and all change orders and RFIs for a ninety (90) day period of time prior to the date of the occurrence which is the subject matter of this lawsuit, and for a thirty (30) day period of time subsequent thereto.

Don Borneke's Response to this Request was as follows:

Defendant objects to Request No. 14 because it is overbroad, not reasonably limited to the time frame surrounding the incident alleged in the complaint, lacks proper foundation, relevance, and to the extent it calls for speculation about what is in possession of other parties and a legal conclusion of what is meant by "subject matter of this lawsuit." Subject to and without waiving its objections, Defendant refers Plaintiff to the enclosed.

**The response, objections, and document production responsive to this request, are all deficient and improper. As such, Plaintiff requests defendant provide <u>all</u> RFIs and change orders for the requested timeframe – as opposed to the limited documentation provided.**

Plaintiff's Request for Production No. 15 propounded on Don Borneke requests:

>Any and all safety manuals in force and effect on the date of the occurrence, and for a ninety (90) day period of time prior and subsequent thereto.

Don Borneke's Response to this Request was as follows:

>Defendant has nothing in response to Request No. 15 and refers Plaintiff to M.A. Mortenson Company for any such information.

**This response and lack of documents provided is improper. As shown in Plaintiff's 201(k) letter pertaining to Defendant's Response and document production to Plaintiff's Request for Production No. 10, this Defendant was contractually required to provide a significant amount of responsive documentation. As such, Plaintiff is requesting this defendant provide any and <u>all</u> responsive documents, including but not limited to:**

- **Defendant's Corporate Safety Manual;**
- **Defendant's Site Specific Safety Plan;**
- **Job Hazard Analyses;**
- **Tool box talks; and**
- **All responsive documents as required by the contract and referenced above.**

Plaintiff's Request for Production No. 16 propounded on Don Borneke requests:

>Any and all documents, videos, handouts, posters, sign in sheets, presentation documents of any kind, notes, and/or memorandum of any kind relating to any safety orientation conducted relative to the construction site at issue in this lawsuit.

Don Borneke's Response to this Request was as follows:

>Defendant objects to Request No. 7 because it is overbroad, not limited to the timeframe surrounding the incident alleged in the complaint, lacks proper foundation, relevance, and to the extent it calls for speculation about what is in possession of other parties. Subject to and without waiving its objections, Defendant refers Plaintiff to M.A. Mortenson Company for any such information.

**This response and objections are deficient and improper. First, the objections reference the incorrect Request Number, second, referring Plaintiff to a non-party is improper when plaintiff is requesting this defendant provide any and all responsive documents within its possession. As such, Plaintiff requests Defendant provide <u>all</u> responsive documents requested in Request No. 16 within the possession of this Defendant.**

This correspondence is being sent pursuant to, and with the full force and effect of Illinois Supreme Court Rule 201(k) and the Federal Rules of Civil Procedure. Please provide

supplemented Answers, Responses and Document Production within 7 days. Should you have any comments, questions, or concerns, please do not hesitate to contact the undersigned.

Very truly yours,

**ANESI, OZMON, RODIN, NOVAK & KOHEN, LTD.**

*/s/ Charles A. Terry*

Charles A. Terry, Esq.



Brian D. Hahn
1040 Avenue of the Americas, Suite 9C
New York, NY 10018
T/F (630) 402-6139
bhahn@hickeysmith.com

www.hickeysmith.com

June 9, 2021

Via E-Mail: cterry@anesilaw.com

Charles Terry, Esq.
Anesi, Ozmon, Rodin, Novak & Kohen, Ltd.
161 North Clark Street, 21st Floor
Chicago, IL 60601

> Re: Response to Correspondence Dated April 23, 2021
> **Nick Georgeff v. Don Borneke Construction, Inc.;**
> **Case No. 3:20-CV-50313, U.S. District Court for the Northern District of Illinois-Eastern Division**
> Hickey Smith File No. 1200-5012

Dear Mr. Terry,

This will serve to respond to your letter dated April 23, 2021 with respect to the issues you assert with respect to my client's answers to interrogatories and requests for production. I apologize for the delay in my response due to my extended illness and then subsequent computer failure. I appreciate your understanding and courtesy.

### **Interrogatories**

As an initial matter, your interrogatories, requests for production, as well as your letter, improperly references the Illinois Supreme Court Rules which are not applicable in this case as it is pending in federal court. This being stated, I must disagree with your characterization that my client's answers to Interrogatories Nos. 2, 3, 4, and 8 are "improper and lacking in specificity." Your letter is replete with this conclusory statement and fails to provide any specific reasoning detailing how the answers to these interrogatories are improper or what particularly is lacking in specificity. You may not be aware, but your client's amended complaint was my client's first notice of any loss.

The amended complaint lacks any specific allegations framing exactly when (aside from the date) and where Plaintiff fell at the jobsite. Furthermore, none of my client's employees witnessed or were present at the specific location of your client's supposed fall. Given the lack of any knowledge concerning specifically where and when your client fell, it only logically follows my client would not have knowledge of anyone who could have witnessed your client's fall. The reference to your client's Fed. R. Civ. P 26(a) initial disclosures, answers to written discovery, along with anyone identified in any future deposition or listed in any medical records were merely to be as inclusive as possible with respect to potential witnesses.

**Exhibit B**

Mr. Charles Terry
June 9, 2021
Page **2** of **5**



  Additionally, it is permissible under Fed. R. Civ. P. 33(d) to refer to documents as an answer to an interrogatory, particularly when the answer can be readily ascertained from the referenced documents. The document entitled Mendota Hills Repowering Plan of the Day is only one page in length and does not present any difficulty in determining potential entities who may be in possession of the requested information. The document contains the names of other contractors to whom you can direct further discovery towards in determining the extent of their knowledge. As such my client's answers to Interrogatories No. 2, 3, 4, and 8 will remain the same. This being stated, however, my client will determine if it had any employees working at the Mendota Hills project in the immediate timeframe surrounding your client's accident and accordingly supplement its disclosures.

  With respect to Interrogatory No. 9, it merely inquired whether my client had any photographs of the "… the Plaintiff, the scene of the occurrence (including any progress photos), and/or the appurtenances described in the Complaint[.]" Quite frankly, my client cannot disclose or produce that which does not exist. This interrogatory also calls for my client to speculate regarding what constitutes "the scene of the occurrence" or what is meant by "the appurtenances described in the Complaint." Given the foregoing, I once again must disagree with your characterization that my client's objections and answer to this interrogatory are "improper and deficient."

  Additionally, your letter now expands Interrogatory No. 9 to now include "any and all photographs (of any kind including jobsite progress photographs)." This new inquiry is of a completely different nature and of a broader scope than originally requested. Assuming for purposes of this letter only that any such photographs do indeed exist, your letter provides no reason or basis how any such photographs would have any bearing, relevance, or usefulness to issues present in this case as any would presumably depict other unrelated areas of the project at various unrelated times. Your request is not narrowly tailored or reasonably limited to the appropriate area or timeframe surrounding your client's accident. I would ask that you submit a proper interrogatory that is appropriately limited in time and scope. It is doubtful that my client possesses any photographs, but I will nevertheless request my client once again determine whether it has any potentially responsive photographs. My client will supplement its discovery responses under separate cover if appropriate.

  Interrogatory No. 13 merely inquired about "liability insurance" and made no mention regarding "applicable excess policies and their respective limits." Again, I disagree with your conclusory contention that my client's objections and answer to this interrogatory are "improper and deficient." Your letter again expands the scope of this interrogatory into a new area of inquiry. I am not sure whether you are aware, but the term excess insurance has a specific meaning within the insurance industry and is not synonymous with umbrella coverage. This being stated, my client has already produced to you the requested information regarding insurance coverage, which is disclosed in the certificate of insurance listed under Exhibit G-Insurance Requirements contained in the previously produced M.A. Mortenson Company Subcontract Agreement (18141002).

  With respect to Interrogatory No. 15, I suspect something happened when the document was converted to a Word document. In any event, my client objects to Interrogatory No. 15 as

Mr. Charles Terry
June 9, 2021
Page **3** of **5**



being premature as discovery is ongoing and improperly attempts to usurp the court rules. My client does not know at this time who it will call to testify at trial and will disclose any such witnesses at the appropriate time and in accordance with the Federal Rules of Civil Procedure and any order of the Court.

### Requests for Production and Document Production

With respect to Request No. 3, you provide no objective basis for your conclusory contention that my client's response is "improper and deficient." In accord to our position with respect to Interrogatory No. 9, my client cannot produce that which does not exist. Request No. 3 clearly requires my client to speculate regarding what constitutes "…any item involved or the scene of the alleged occurrence…" Given the foregoing, I once again must disagree with your characterization that my client's objections and responses to thee requests are "improper and deficient."

Additionally, your letter now expands the scope of Request No. 3 to now include "any and all progress photographs, aerial photographs, jobsite photographs, and any other photographs of the jobsite as a whole." Putting aside the improper foundation and assumption such photographs even exist. This is a completely new request that is of a completely different nature and of a broader scope than the original request. Assuming for purposes of this letter only that any such photographs do indeed exist, your letter provides no reason or basis how any such photographs would have any bearing, relevance, or usefulness to issues present in this case as any would presumably depict other unrelated areas of the project at various unrelated times.

Your request is not narrowly tailored or reasonably limited to the appropriate area or timeframe surrounding your client's accident. I would ask that you submit a proper request for production in accordance with the Federal Rules of Civil Procedure that is appropriately limited in time and scope. As stated previously, it is highly doubtful that my client possesses any photographs as I have not been provided with any in connection with my representation. In an effort towards resolving this impasse, I will request my client determine whether it has any potentially responsive photographs. Any responsive photographs that are uncovered will be supplemented under separate cover if appropriate.

With respect to Request No. 7, it requested production of "[a]ny and all accident reports, investigative reports, and inspection reports pertaining to the incident/injuries sustained by any party to this lawsuit." I completely disagree with your contention that my client's responses were "improper and deficient" given that the lawsuit was my client's first notice of any claim and that the phrases "accident reports", "investigative reports" and "inspection reports" are vague, overbroad and undefined. Any report prepared following receipt of the lawsuit is either covered by attorney and client privilege or insured and insurer privilege. Furthermore, my client's response referring to medical records produced or obtained via subpoena with due notice to all parties was merely to be as inclusive as possible in response to the broad and undefined requests.

With respect to Requests Nos. 10 through 16, your letter is replete with the insinuation my client's objections and responses are "improper and deficient." Putting aside the improper

Mr. Charles Terry
June 9, 2021
Page **4** of **5**



foundation, complete lack of relevance, assumption such documents even exist, and the complete lack of any proportionality to the issues present in this matter, your letter goes well beyond the initial requests to include completely new requests that are of a completely different nature and of a broader scope than the originals.

As I am sure you are well aware, the amended complaint alleges that your client fell and became injured on November 15, 2018 because of snow and ice at the jobsite and that my client had an obligation to remove snow and ice from the jobsite. My client produced a copy of the subcontract agreement with M.A. Mortenson along the pertinent change order No. 2 dated March 4, 2019 that modified the original scope of work, in pertinent part, to include snow removal beginning on the date of that change order.

As such, it is indisputable that my client had no obligation to remove snow from the jobsite on the date of your client's accident. None of the other documents you demand my client produce have any bearing or could possibly lead to the discovery of relevant and admissible evidence at trial. Your letter fails to provide any reason, rationale, or need for the completely overbroad requests. All in all, your requests are not narrowly tailored nor reasonably limited to the appropriate area where your client fell or immediate timeframe surrounding your client's accident.

Discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 U.S. Dist. LEXIS 2712, 1994 WL 75055 at *2 (N.D.Ill.1994). "Parties are entitled to a reasonable opportunity to investigate the facts-and no more." *Id.* Finally, the requirement of proportionality in discovery is a point that has been made **over and over again** by the federal courts in this district. *See generally, Bierk v. Tango Mobile, LLC*, 2021 U.S. Dist. LEXIS 33440, 2021 WL 698479, at *1 (N.D. Ill. 2021).

"While discovery is often broad, the Federal Rules of Civil Procedure authorize district courts to protect targets of discovery from annoyance, embarrassment, oppression, or undue burden or expense." *Stagman v. Ryan,* 176 F.3d 986, 993 (7th Cir. 1999), (quoting Fed. R. Civ. P. 26(c)); *Sullivan v. Conway,* 1995 U.S. Dist. LEXIS 14113, 1995 WL 573421, *1 (N.D. Ill. 1995) (recognizing that the policy of broad discovery is counterbalanced by the ability to limit discovery requests that impose undue burden or expense). Furthermore, a court may limit discovery if it determines that the burden of the discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(iii) - *Wiginton v. CB Richard Ellis, Inc.,* 229 F.R.D. 568, 571 (N.D. Ill. 2004).

Distilled to its essential theme, particularly with respect to Requests Nos. 10 through 16, your letter simply constitutes an improper demand that my client produce everything in connection with its work on the Mendota Hills Wind project. Your letter does not begin to comport with the doctrine of proportionality with respect to the issues of this case. My client should not have to be unduly burdened with the time and expense to compile completely overbroad and irrelevant information or documents in response to your requests. As such, my client will only respond to proper supplemental interrogatories and requests for production that are narrowly tailored and comport with the Federal Rules of Civil Procedure.

Mr. Charles Terry
June 9, 2021
Page **5** of **5**



Please contact me should you wish to discuss further.

Sincerely yours,

HICKEY SMITH DODD

Brian D. Hahn

Attorney for Defendant,